# MISSISSIPPI DECISIONS

CONTAINING THE

# UNREPORTED OPINIONS OF THE SUPREME COURT.

---

## J. S. WALKER v. GEORGIA PACIFIC RAILROAD COMPANY.

**Eminent Domain Proceedings.— Right of Railroad to Institute.**

> The pendency of a suit in equity by a landowner against a railroad company for having wrongfully constructed its roadbed on his land does not bar eminent domain proceedings by the Railroad Company to condemn the land for a right of way.[1]

**Same—Termination of Suit by Condemnation Proceedings—Collateral Attack.**

> A regular eminent domain proceeding by a Railroad Company condemning lands for a right of way and fixing the sum to be paid therefor terminates a previous suit begun by the landowner for damages resulting from the wrongful entry by the Railroad Company, and where the proceedings are regular on its face it cannot be attacked collaterally.[2]

The Georgia Pacific Railroad Company entered upon lands belonging to J. S. Walker and constructed its roadbed thereon. Walker filed the bill in this case in the Chancery Court of Washington county, where the land was situated, against the railroad company praying for the appointment of a commissioner to take an accounting of the damages suffered by complainant by reason

---

[1] Authority in the charter of a railroad company to institute eminent domain proceedings does not deprive the landowner of the right of action in ejectment or by any other appropriate remedy to recover possession, if the company entered upon and occupied the land without obtaining a right of way. Beck v. Railroad Co., 65 Miss. 172.

[2] Where a railroad company enters upon land without acquiring the right of way, though a trespasser and liable as such, it still has a right to acquire a right of way by condemnation. Railroad Co. v. Dickson, 63 Miss. 380.

If the charter requires that landowners shall be compensated at the time their property was taken, and the company has used the lands for

of the alleged wrongful taking of the land and for the use and occupation of same and for a decree against defendant for the amount found to be due by the commissioner and for an injunction restraining defendant from further occupying and using the land.

The defendant company answered the bill, but before final hearing it instituted eminent domain proceedings for the condemnation of the lands for use as a right of way and procured a judgment for its condemnation, fixing the amount of damages. It then filed an amended bill setting up this fact and paid the amount of damages assessed by the jury to the circuit clerk and tendered same to complainant in the amended bill. Complainant filed exceptions to the amended answer.

From a final decree, adjuring the eminent domain proceedings to have been regular and according to law and that the amount of the damages had been properly tendered and that the eminent domain proceedings vested title to the right of way in defendant, complainant appeals.

APPEALED from Chancery Court, Washington county, W. G. PHELPS, Chancellor.

Affirmed, April 27, 1885.

*Attorneys for appellant, W. H. Trigg, F. Johnston.*

*Attorney for appellee, W. A. Percy.*

seven or eight years without procuring the right of way, on the petition of the owner for an appraisement of his damages under the charter, the company is not entitled to have the damages estimated as of the time of the original taking. Railroad Co. *v.* Hopson, 73 Miss. 773.

Neither party in an eminent domain proceeding is in any way affected by the fact that the owner had previously recovered of the company in an action of trespass damages for having entered on the land and built and operated its road. Hopson *v.* Railroad Co., 71 Miss. 503.

Offer to show that an alleged verdict in proceedings to appropriate land for the right of way of a railroad was no verdict, but the certificate of unauthorized individuals, is not a collateral attack on the verdict. West *v.* Railroad Co., 61 Miss. 536.

A proceeding to take private property for public use is not a "matter," "case," or "cause" as employed in the Constitution of 1869, fixing the jurisdiction of the courts it created. Railroad Co. *v.* Drake, 60 Miss. 621.

Brief of W. H. Trigg:

The possession of land acquired for railway purposes, in order to be legal, must be obtained by strict compliance with the right of acquisition, either by purchase or condemnation granted to them by the terms of their charter and any variance therefrom will to that extent constitute such railroad company a trespasser. 2 Kent, 299 ; 2 Cranch, 167.

It has no power but such as has been granted in clear and specific terms.    1 Black, 446 ; 37 Miss. 702 ; 60 Miss. 702–705.

A law which does not provide for compensation is void, but if not void, it is inoperative to pass title till compensation is made. Mills, Eminent Domain, § 124 ; Bonaparte *v.* Camden R. Co., Baldwin, 205.

It is the duty of the corporation to condemn, and a failure so to do makes it a trespasser, and any act of the Legislature negativing the duty of payments before entry would be unconstitutional and void.    60 Miss. 568 ; Pierce, Railroads, pp. 165 *et seq.;* Mills, Eminent Domain, § 332.

It is not cured by future condemnation and the defendant is still a trespasser.    *Ibid.;* 51 Mo. 136 ; 102 Mass. 512 ; Mills, Eminent Domain, §§ 89, 90 ; 118 Mass. 138 ; 5 Wall. 413 ; 84 Ill. 135.

Mere acquiescence of owner no waiver of rights.  ·  Mills, Eminent Domain, § 143 *et seq.*

Inasmuch, then, as the land in the hands of O. M. Blanton was subject to the payment of the trust debt, its purchase by appellee, or its vendee, did not relieve it from liability.    Neither would the consent or agreement of Bolton as agent avail the appellee.    37 Miss. 558.

The appellant was, even if the defendant at this late date could go in and condemn under its charter privilege, entitled not only to the value of the land taken, but also to recover the value of the roadbed, rails, and cross-ties.    60 Miss. 702.

Even the conveyance of O. M. Blanton will not be sufficient to relieve the appellee from the effects of the illegal entry.

The trustee and *cestui que trust* in the deed of trust executed by O. M. Blanton to O. Hea, trustee, were entitled to notice of entry, and the railroad company was bound by the recorded deed of trust to take notice of the fact that this title was outstanding. Mills, Eminent Domain, §§ 74, 75.

It is charged that before the institution of this suit that complainant requested the railway company to have a jury summoned to assess his damages, sustained by reason of the occupation of a portion of his land as a roadbed. This request was by the defendant refused.

This statement in complainant's bill is nowhere denied. This, we think, if not before, placed the railroad in the shoes of O. M. Blanton, the mortgagor, entitled to no privilege at the hands of the complainant which Blanton could not claim.

As to the character of the decree that should have been rendered, we cite 61 Miss. 481; Code, 1880, § 1415.

Again, the return of the verdict of the jury shows that in the rendition of their verdict they did not take into consideration the value of the land taken in lot 4 of section 11, it being a part of the land mentioned in the bill, and occupied by appellees.

Brief of F. Johnston:

The propositions that I shall present are as follows:

1. The condemnation proceedings cannot defeat the jurisdiction of the Chancery Court in this cause, because, first, the condemnation proceedings are void, and, secondly, no tender of the amount of the verdict was ever tendered. And thirdly, part of the right of way in lot 4 was not included in the condemnation proceedings.

It is beyond controversy now that Walker is, in respect to this land, the owner of the legal title, as mortgagee and purchaser at the foreclosure sale.

The acts of the Legislature respecting this railroad company are: Act of July 21, 1870, p. 277; act of 1872, p. 247; act of 1882, pp. 828, 829. All these acts in taking *in invitum* required *notice* to the owner, and *tender* to the owner of the compensation.

The writ was taken out on the 8th day of October. It fixed no day for the assembling of the jury. The sheriff at once fixed the 14th of October, and executed the writ as to J. S. Walker, by posting it on the land, stating that Walker was not " within " the county, and had no dwelling-house. Dr. Walker, as shown by the proof (his affidavit), not objected to, was a citizen of the county, with a fixed place of abode. He had not been out of the county for a great while, until October 8, 1884, he left the county on business, returning on the 16th of that month. Both

the defendant and the sheriff knew that he was a citizen of the county and that he had a place of abode in the county.   I deny that this posting of the notice on a tree or fence, on the state of facts disclosed, can make this *ex parte* proceeding binding or legal.

All the authorities agree that the class of statutes must be strictly construed *and strictly followed* to confer this right of entry on the railroad company.   118 Mass. 138; 5 Wall. 413; 84 Ill. 135; Mills, Eminent Domain, 591.

No tender of the money was ever made.

It is a tender or payment that gives the right to enter or the right to easement.   Williams v. New Orleans R. Co., 60 Miss. 706; Cameron v. Supervisors, 47 Miss. 264; Paris v. Mason, 37 Tex. 447; Floyd v. Turner, 23 Tex. 292; Pierpont v. Stainsville, 9 W. Va. 215; Mettler v. Easton R. Co., 25 N. J. Eq. —.

Especially when the company is solvent.   Turnpike Co. v. Burket, 26 Ind. 5.

And the pending of proceedings to condemn will be no defense to the action of ejectment.   Coburn v. Lumber Co., 46 Cal. 31.

Payment or tender indispensable.   New Orleans R. Co. v. Lagarde, 10 La. Ann. 150; Gillan v. Hutchinson, 16 Cal. 153.

The answer attempted to this requirement was, that the money was paid to the circuit clerk.   But this will not do.   Clearly nothing but a statutory requirement could justify this.

If he is unknown, then only could the money be paid to the clerk.   But he was not unknown to the defendant, but well known to the railroad company, and its solicitors.   He was, and is, their adversary in this particular cause.   It was his distinct and absolute right to have this money tendered to him.

Where the statutory method is not strictly followed, no easement is obtained, and there is no defense to the usual actions or legal remedies in the court for relief.   Mills, Eminent Domain, § 91; Blaisdell v. Winthrop, 118 Mass. 138; Ewing v. St. Louis, 5 Wall. 413; Railroad Co. v. Schertz, 84 Ill. 135.

The court may order and direct compensation to be made, or enjoin the use of the property.   Davis v. Lacrosse R. Co., 12 Wis. 16.


Brief of W. A. Percy.

Where judgment has been recovered in ejectment against a railroad company, for land occupied by its track, an injunction

against the execution of the judgment will lie until the company can have the damages assessed to acquire lawful possession under its power of eminent domain. Pittsburg & L. E. R. Co. *v.* Brown, Am. & Eng. R. Cas., vol. 10, p. 1.

The sole question in this case, as now presented to the court, is whether, pending a litigation with regard to its right of way, a railroad company may admit plaintiff's right to resort to a condemnation. * * *

The condemnation proceedings were strictly regular, exactly in accordance with the statute. Acts 1882, p. 828. The sheriff's return shows that plaintiff was not to be found, and that he posted notice for the time required at a conspicuous place on the land. It is well-settled law in this State that unless notice is required by statute, none need be given in this proceeding. Stewart *v.* Board of Police, 25 Miss. 479 ; New Orleans R. Co. *v.* Hemphill, 35 Miss. 17.

The award of the jury of inquest does not show whether the value of the cross-ties and rails was included in its estimate or not. Presumably all proper element of damages was considered, and where the statute appears on the face of the proceedings to have been strictly conformed to it cannot be collaterally impeached. Pierce, Railroads, 189.

If the jury of inquest refused to consider the value of defendant's superstructure in making the award, or to allow damage for the same, the proper plan to test the rightfulness of its action in this particular was to appeal as provided by the statute, and to assign this as one of the grounds of appeal. In point of fact, this has been done, and that appeal is now pending in the Circuit Court. * * *

The railroad company was not a trespasser *ab initio*. It went in and built its superstructure by virtue of the deed from Blanton, the mortgagor, then in possession. It has the right to remove it at any time, and because its title proves defective, the landowner cannot compel it now to buy in its own property. 42 Miss. 555 ; Pain, Railroads, 213. * * *

The Supreme Court of Michigan uses this language: " The railroad company, whether rightfully or wrongfully, laid this track while in possession for purposes entirely distinct from any use of the land as an isolated parcel. It would be absurd to apply to land so used and to a railway track laid on it, the tech-

nical views which apply in some other cases to structures inseparably attached to the freehold." "And in a proceeding to obtain a legal and permanent right to occupy the land for this very purpose, there would be no sense in compelling them to buy their own property." Am. & Eng. R. Cas., vol. 5, p. 386.

In this case cited, the point was directly in issue upon an appeal from a jury awarding damages. See also Am. & Eng. R. Cas., vol. 17, p. 78 — a strong case.

OPINION.— CAMPBELL, J.:

The pending of the suit in chancery was no obstacle to the institution of proceedings in pursuance of the charter of the appellee for the condemnation of the right of way. This proceeding seems to have been in strict accordance with the charter, and its effect was to vest the right of way in the appellee, and mutually to put an end to the controversy involved in this suit. The amount of compensation awarded by the jury in the proceedings to condemn the right of way was deposited with the clerk, and also was offered to the appellant by the appellee in its answer. The appellant could have called for and obtained the money thus tendered, and cannot object that the compensation awarded was not made.

Whether the sum awarded was enough, and what were the elements of the estimate of damages by the jury, is not before us. That is involved in any appeal which may have been taken from the finding of the jury as provided by the charter. All that we decide is that the proceeding for condemnation appears on the face of the papers to have been according to law, and that the legal effect was to put an end to the controversy between the parties to the suit, and that the Chancellor properly disposed of the case. The declaration of the decree as to the nonliability of the appellee, for the value of the cross-ties and rails, whether correct or not, is not properly in the decree, and is not, therefore, *res judicata*. We express no opinion upon that question. If an appeal was taken from the finding of the jury, all questions pertaining to the inquest of damages properly arise in that appeal.

*Affirmed* April 27, 1885.